1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC ROGERS,                        )    No. C 06-07232 JF (PR)
                                    )
            Petitioner,             )    ORDER DENYING PETITION FOR A
                                    )    WRIT OF HABEAS CORPUS
    vs.                             )
                                    )
                                    )
K. MENDOZA-POWERS, Warden,          )
                                    )
            Respondent.             )
                                    )
_____    )

**INTRODUCTION**

        Petitioner is a pro se prisoner seeking a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In an order to show cause issued May 22, 2007, this Court found

that Petitioner had raised four cognizable claims:  (1) the prosecutor committed

misconduct when he used his peremptory challenges to remove two African-

American women as prospective jurors; (2) Petitioner was denied due process and

the right to confront witnesses by the trial court's refusal to permit discovery that

could have impeached the credibility of police witnesses; (3) the trial court failed to

instruct the jury sua sponte on the meaning of the technical term "material part" that

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.06\Rogers232_denyHC.wpd

1    was included in CALJIC no. 2.21.2; and (4) Petitioner was denied his federal

2    constitutional right to a jury trial, and the court acted in excess of its jurisdiction,

3    when appellant was sentenced to an upper term based on facts beyond those found

4    true by the jury. (Pet. at 6-7.)  Respondent filed an answer addressing the merits of

5    the petition, and Petitioner filed a traverse.  Having reviewed the papers and the

6    underlying record, the Court concludes that Petitioner is not entitled to federal

7    habeas corpus relief and will deny the petition.

8                              **FACTUAL BACKGROUND**[1]

9           [Petitioner and two codefendants, White and Bailey] were
     arrested June 12, 2003 during an Oakland Police Department "buy-
10    bust operation." Between 5:30 and 11:00 p.m., Officer Richard Vierra
     and Sergeant Sharon Williams attempted about 15 undercover drug
11    purchases. When they made a successful purchase, they called in teams
     of uniformed officers to arrest the suspects. Vierra made two to four
12    successful buys and Williams, six or seven.
            At about 9:45 p.m., Vierra saw [Petitioner], White and Todd
13    Bailey [original footnote omitted] standing on the sidewalk at the
     corner of 88th Avenue and Plymouth Street. Vierra pulled over and
14    approached the three men. Before Vierra said anything, Bailey stepped
     forward and asked what he wanted. Vierra said he wanted "a solid,"
15    which is slang for $25 worth of cocaine. Bailey looked him over and
     asked, "Who do you know around here?" Vierra responded, "I know a
16    guy named Jay who lives down on Holly Street," which was not true.
     During this conversation, Bailey was speaking loud enough that
17    [Petitioner] and White, who were standing no more than five feet
     away, could hear him. [Petitioner] and White were looking at Vierra
18    during the conversation and appeared to be listening.
            Bailey told Vierra to hold on a second, and he and White
19    walked about 18 feet away to a parking area in front of 1711 88th
     Avenue and huddled together. A chain link fence with wooden slats
20    separated Vierra from Bailey and White and partially obstructed his
     view. [Petitioner], who stayed behind, told Vierra, "You can give me
21    the money." Vierra gave him a $20 and a $5 bill in controlled
     currency. Vierra moved about three feet to a position where he could
22    see Bailey and White. He saw Bailey hand White two small white
     rocks. White they walked over to Vierra and handed him the rocks of
23    suspected cocaine.
            As Vierra walked back to his car, Williams called in arrest
24    teams, giving them the location and a description of the suspects.
     Within seconds, an arrest team pulled up in an unmarked van and three
25    uniformed officers got out of the van. Bailey ran into the backyard of

26    _____

27           [1]Relevant facts are taken from the unpublished opinion of the California Ct.
     of Appeal.  See People v. Rogers, A104559, slip op. at 2-4 (Feb. 27, 2006) (Resp't
28    Ex. C).

1711 18th Avenue. The evidence was disputed whether [Petitioner] stayed where he was or whether he walked northbound up 88th Avenue. White walked southbound. All of the suspects were apprehended and searched. No controlled currency, no cash or weapons, and no narcotics or drug paraphernalia were found on the suspects. Although police never searched the area south of 1711 88th Avenue, where [Petitioner] had received the money from Vierra, no stash of narcotics was located in the area where they were arrested. While chasing Bailey, one of the officers saw Bailey move his right hand as if to throw something over a fence. After the arrest, the police searched unsuccessfully on both sides of the fence for narcotics or controlled currency.

At 11:00 p.m., Vierra returned to the police station to complete the paperwork for the two to four drug purchases he made that evening. The drug lab tested one of the rocks Vierra received from White and determined it was cocaine base.

[Petitioner], White, and Bailey were charged in an information with selling, giving away or offering to sell or give away cocaine base in violation of Health and Safety Code section 11352, subdivision (a). (footnote omitted.)  It was alleged that [Petitioner] had a prior conviction within the meaning of Penal Code sections 1170.12, subdivision (c)(1) and 667, subdivision (e)(1); a prior conviction within the meaning of Penal Code section 667.5, subdivision (b); and a third prior conviction...

The jury found [Petitioner] and White guilty of violating section 11352, subdivision (a), as charged. The court sentenced [Petitioner] to the upper term of five years for the sale offenses, doubled pursuant to Penal Code section 667, subdivision (e)(1). The court stayed the enhancements for the two other prior convictions...

## DISCUSSION

### A.   <u>Standard of Review</u>

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under AEDPA, a federal court cannot grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or an involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if

United States District Court

For the Northern District of California

1  the state court arrives at a conclusion opposite to that reached by [the Supreme]

2  Court on a question of law or if the state court decides a case differently than [the]

3  Court has on a set of materially indistinguishable facts." <u>Williams (Terry) v. Taylor,</u>

4  529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application clause,' a

5  federal habeas court may grant the writ if the state court identifies the correct

6  governing legal principle from [the] Court's decisions but unreasonably applies that

7  principle to the facts of the prisoner's case." <u>Id.</u>  "[A] federal habeas court may not

8  issue the writ simply because the court concludes in its independent judgment that

9  the relevant state-court decision applied clearly established federal law erroneously

10  or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 411.

11       A federal habeas court making the "unreasonable application" inquiry should

12  ask whether the state court's application of clearly established federal law was

13  "objectively unreasonable." <u>Id.</u> at 409.  The "objectively unreasonable" standard

14  does not equate to "clear error"  because "[t]hese two standards . . . are not the same.

15  The gloss of clear error fails to give proper deference to state courts by conflating

16  error (even clear error) with unreasonableness." <u>Lockyer v. Andrade,</u> 538 U.S. 63,

17  75 (2003).

18       A federal habeas court may grant the writ it if concludes that the state court's

19  adjudication of the claim "resulted in a decision that was based on an unreasonable

20  determination of the facts in light of the evidence presented in the state court

21  proceeding."  28 U.S.C. § 2254(d)(2).  The court must presume correct any

22  determination of a factual issue made by a state court unless petitioner rebuts the

23  presumption of correctness by clear and convincing evidence.  28 U.S.C. §

24  2254(e)(1).

25  **B.**     <u>**Analysis of Legal Claims**</u>

26       1.     <u>Improper Use of Peremptory Challenges</u>

27       Petitioner first claims that the prosecutor "committed misconduct when he

1    used his peremptory challenges to remove two African women [sic] jurors. The trial

2    court erred when it found that the prosecutor had not discriminated on the basis of

3    race in jury selection." (Pet. at 6.)  At trial, Petitioner argued that the prosecution's

4    use of the peremptory challenges constituted a prima facie case of discrimination

5    because both of the jurors in question said that they could be fair and impartial.

6    (Resp't Ex. C. at 6.)  On appeal, Petitioner further attempted to establish a prima

7    facie case of discrimination by alleging that the prosecutor, in using his peremptory

8    challenges to remove two of the three prospective African-American jurors,

9    challenged a disproportionate number of African-Americans.  (Id. at 7.)

10         Under the Equal Protection Clause, race may not be the sole basis for a

11   peremptory challenge.  Batson v. Kentucky, 476 U.S. 79, 89 (1986).  In Batson, the

12   Court promulgated a three-part test for evaluating the propriety of an allegedly

13   discriminatory peremptory challenge:  "First, the defendant must make out a prima

14   facie case 'by showing that the totality of the relevant facts gives rise to an inference

15   of discriminatory purpose.'  476 U.S. at 93-94 (citing Washington v. Davis, 426

16   U.S. 229, 239-242 (1976).  Second, once the defendant has made out a prima facie

17   case, the 'burden shifts to the State to explain adequately the racial exclusion' by

18   offering permissible race-neutral justifications for the strikes. 476 U.S. at 94…Third,

19   '[i]f a race-neutral explanation is tendered, the trial court must then decide ...

20   whether the opponent of the strike has proved purposeful racial discrimination.'

21   Purkett v. Elem, 514 U.S. 765 (1995) (per curiam)."  Johnson, 545 U.S. at 168

22   (2005).

23         A pattern of striking minority venirepersons may sufficiently establish an

24   inference of discrimination even if the prosecutor has not attempted to exclude all

25   members of that minority group and even if some members of the minority remain

26   empaneled on the jury. Paulino v. Castro, 371 F.3d 1083, 1090-91 (9th Cir. 2004).

27   However, "[a]lthough a statistical disparity could be sufficient to make a prima facie

28

United States District Court

For the Northern District of California

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.06\Rogers232_denyHC.wpd

1    inference of bias, such a presumption could be dispelled by other relevant

2    circumstances." <u>Williams v. Runnels</u>, 432 F.3d 1102, 1107 (9th Cir. 2006).

3        On the issue of discriminatory intent, the AEDPA compels federal courts

4    conducting habeas corpus review to presume the correctness of factual findings by

5    state trial and appellate courts.  <u>See Purkett</u> 514 U.S. at 769; <u>Mitleider v. Hall</u>, 391

6    F.3d 1039, 1050 (9th Cir. 2004).  A federal court will defer to a state court's finding

7    of a lack of discriminatory intent unless the petitioner can show by clear and

8    convincing evidence that "it was unreasonable to credit the prosecutor's race-neutral

9    explanations for the <u>Batson</u> challenge." <u>See</u> <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240

10   (2005); <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006).

11       The state appellate court relied on the Supreme Court's decisions in <u>Johnson</u>

12   <u>v. California</u>, 545 U.S. 162 (2005), and <u>Batson</u>, 476 U.S. 79, in denying Petitioner's

13   claim that the prosecution's use of its peremptory challenges constituted racial

14   discrimination.  The state appellate court found that Petitioner had failed to establish

15   a prima facie case of discrimination.  Citing the California Supreme Court's holding

16   in <u>People v. Box</u>, 23 Cal.4th 1153, 1188-89 (2000), the appellate court observed that

17   "[a] challenged juror's membership in a cognizable racial group is insufficient alone

18   to raise an inference of discrimination."  (Resp't Ex. C at 6.)  The state court further

19   held that the prosecution's challenges of two African-American jurors despite these

20   jurors' claims of impartiality did not give rise to an inference of racial discrimination

21   because all of the venirepersons who were not removed for cause also claimed to be

22   impartial.  (<u>Id.</u>)

23       Moreover, the state appellate court found credible the prosecution's claim

24   that the challenged jurors may have had reasons to be sympathetic to the defense,

25   finding that certain statements made by the stricken jurors  "dispel[led] any

26   inference of discrimination" by the prosecution.  (<u>Id.</u> at 7-8.)  In particular, the court

27   held that because juror Number Four, "whose sister had been murdered, said that

28

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.06\Rogers232_denyHC.wpd

United States District Court
For the Northern District of California

murderers received too short a sentence, shorter than the sentences given to drug dealers," it was reasonable to conclude that she might be reluctant to convict a defendant on trial for drug charges out of her concern that conviction would result in a sentence disproportionately long compared to the sentence given to her sister's murderers.  (<u>Id.</u> at 8.)  The state court also considered it justifiable for the prosecution to strike juror Number Forty-two, who "said she believed that defense attorneys do not work hard enough for their clients."  (<u>Id.</u>)  The state court found that this belief reasonably could lead the prosecution to believe that juror Number Forty-two "would advocate for the defendants on the jury to compensate for their perceived lack of zealous representation."  (<u>Id.</u>)

Petitioner has failed to produce facts that show by clear and convincing evidence that it was objectively unreasonable for the state appellate court to find that the defendant "failed to raise an inference of discrimination" and to consequently accept the prosecution's proffered reasons for the strikes.  (<u>Id.</u> at 9.)  This Court therefore is compelled to presume that those factual findings were correct.  <u>See</u> <u>Purkett</u> 514 U.S. at 769.  The state appellate court's decision rejecting this claim was not contrary to, or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  <u>See</u> 28 U.S.C. § 2254(d).

2.    <u>Denial of Discovery of Police Report</u>

Petitioner next claims he "was denied due process and the right to confront witness [sic] by the trial court's denial of discovery of [a] police report which could impeach the credibility of police witnesses."  (Pet. at 6.)  Petitioner claims that he was entitled to this evidence under the Supreme Court's decision in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

<u>Brady</u> is the established federal standard for reviewing the propriety of suppression of evidence.  <u>See</u> <u>Mueller v. Anemone</u>, 181 F.3d 557, 576-78. (4th Cir.

United States District Court

For the Northern District of California

1    1999).  In <u>Brady</u>, the Court held that "the suppression by the prosecution of evidence

2    favorable to an accused upon request violates due process where the evidence is

3    material either to guilt or punishment, irrespective of the good faith or bad faith of

4    the prosecution." 373 U.S. at 87.  In <u>Stickler v. Greene</u>, 527 U.S. 263, 281-82

5    (1999), the Supreme Court identified the "three components of a true <u>Brady</u>

6    violation:  the evidence at issue must be favorable to the accused, either because it is

7    exculpatory, or because it is impeaching; that evidence must have been suppressed

8    by the State, either willfully or inadvertently; and prejudice must have ensued."  The

9    party asserting a <u>Brady</u> error claim has the burden of identifying the undisclosed

10   evidence and indicating that it is of an exculpatory nature.  <u>See</u> <u>Phillips v.</u>

11   <u>Woodford</u>, 267 F.3d 966, 987 (9th Cir. 2001); <u>United States v. Dierling</u>, 131 F.3d

12   722, 726 (8th Cir. 1997).

13           At trial, Petitioner informally requested discovery from the prosecutor of "(1)

14   a copy of the CAD printout and tape purge regarding the incident, and (2) the three

15   police reports written by Officer Vierra before the incident and the three reports he

16   wrote following the incident."  (Resp't Ex. C at 11.)  The trial court denied

17   Petitioner's request both as untimely and because it was unlikely to lead to the

18   discovery of relevant evidence.   The state appellate court pointed out that under Cal.

19   Pen. Code §1054.5 (subd. (b)), a party from whom discovery is requested has fifteen

20   days to provide the material requested before the requesting party may seek a court

21   order.  (<u>Id.</u>)  Petitioner made his request three days into the jury selection.  (<u>Id.</u>)  The

22   trial court also noted that Petitioner retained the opportunity to request discovery of

23   this information during trial, provided that he could lay a foundation for admitting

24   the reports as evidence, but Petitioner neither renewed his request nor asked any

25   questions that might have established the relevance of the materials.

26           Reviewing the trial court proceedings under <u>Brady</u>, the state appellate court

27   found no <u>Brady</u> violation because there was no evidence of suppression by the

28

United States District Court

For the Northern District of California

1   prosecution.  (Id. at 10.)  Suppression occurs only when the "defendants are unaware

2   of [the evidence] and could not have discovered it through the exercise of reasonable

3   diligence."  People v. Salazar, 35 Cal.4th 1032, 1042 (2005).  The state appellate

4   court held that Petitioner could have discovered the evidence through the exercise of

5   reasonable diligence in accordance with the California discovery statutes.  (Resp't

6   Ex. C at 10.)

7          Petitioner's claim is without merit.  Petitioner merely speculates on the

8   relevance of the requested material, and does not explain how it was either

9   exculpatory or impeaching.  Petitioner has also failed to show that the state, either

10  wilfully or inadvertently, suppressed the evidence.  Petitioner has failed to meet his

11  burden.  See Phillips 267 F.3d at 987.  Accordingly, the state court's rejection of this

12  claim was not contrary to, or an unreasonable application of federal law, nor was it

13  based on an unreasonable determination of the facts in light of the evidence

14  presented.  See 28 U.S.C. § 2254(d).

15          3.     Failure to Give Proper Jury Instructions

16          Petitioner next claims that the trial court failed to instruct the jury sua sponte

17  on the meaning of the technical term "material part" in CALJIC no. 2.21.2.

18  Petitioner brought this claim in the state appellate court, but he omitted it in his

19  appeal to the state supreme court.[2]  Petitioner alleged in his appeal that, had the jury

20  been properly instructed, the jury would have distrusted the credibility of police

21  officers whose testimony on other matters contained inconsistencies and would have

22  cast doubt on their testimony implicating Petitioner in the sale of cocaine.  (Resp't

23  Ex. C at 12.)

24  ───────────────────

25          [2]As Respondent points out, Petitioner did not properly exhaust this claim by
    presenting the highest state court available with a fair opportunity to rule on the
26  merits of this claim.  See 28 U.S.C. § 2254(b), (c).  The court may deny a petition on
    the merits even if it is unexhausted, and since Responded has answered on the
27  substantive merits of the claim, this Court will review the claim on the merits.  See
    28 U.S.C. § 2254(b)(2).

28

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.06\Rogers232_denyHC.wpd

Federal habeas relief will not be granted for failure to give an instruction unless the ailing instruction, viewed in conjunction with all other instructions given and the trial record, "so infected the entire trial that the resulting conviction violates due process." See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973). The instructional error must have "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abramson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776. (1946)).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law.  See Walker v. Endell, 850 F.2d at 475-76 (citing Henderson v. Kibbe, 431 U.S. at 155).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'"  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).  The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given.  Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001)

CALJIC No. 2.21.2 states: "A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others.  You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of trust favors his or her testimony in other particulars."  In judging the merits of this claim, the state appellate court applied the California Supreme Court's holding in People v. Watson, 46 Cal.2d 818, 836 (1956), which states that reversible error occurs only when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  The state appellate court found that this standard had not been met.  It rejected the notion that the jury was misled by the trial court's failure to define the term "material part," finding that "[i]t defies common

sense that the jury would believe that, if it concluded a witness lied about an important issue at trial, it was not free to disbelieve the witness regarding other issues determinative of the outcome."  (Resp't Ex. C at 13.)

The state court also found that any practical effect of defining "material part" as used in CALJIC No.2.21.2 was achieved by other parts of the instructions, the language of which indicated to the jurors that they retained the freedom to believe or disbelieve a witness based on the jurors' perceptions of the truth or falsity of a particular statement.  In particular, the state court cited the instruction that:  "In determining the believability of a witness, you may consider anything that has a tendency to prove or disprove the truthfulness of the testimony…You should give the testimony of a single witness whatever weight you think it deserves."  (Resp't Ex. C. at 13.)  Given that the disputed term was placed in a context that made clear to the jurors that it was entirely up to them whether to believe any witness' testimony, the state appellate court found no indication that a different outcome would have resulted if the trial court had defined the term "material part" to the jury.  (Id.)

The state appellate court's dismissal of Petitioner's claim was wholly consistent with Estelle.  502 U.S. at 72.  The challenged instruction, taken as a whole, plainly indicated that the jurors could weigh the credibility of witnesses on each particular claim.  Petitioner has not established that the instruction had a substantial or injurious effect or influence on the jury's finding that he was a party to the sale of cocaine.  See Brecht, 507 U.S. at 657.  Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d).

### 4.    Upper-Term Sentence

Petitioner's final claim is that he was denied his "federal constitution [sic] right to a jury trial and the court acted in excess of it's [sic] jurisdiction when

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.06\Rogers232_denyHC.wpd

United States District Court
For the Northern District of California

appellant was sentenced to an upper term based on facts beyond those found true by the jury." (Pet. At 8.) Petitioner brings his claim pursuant to <u>Cunningham v. California</u>, 549 U.S. 270 (2007), which requires that the imposition of the upper term comply with the Sixth Amendment.

Cunningham is one of a number of Supreme Court decisions limiting judicial discretion in sentencing. In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 488-90. The "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings. <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04 (2004). In <u>United States v. Booker</u>, 543 U.S. 220, 288-290 (2005), the Supreme Court held that a sentence based on facts determined by the court that exceeded that which could have been imposed based solely on facts found by the jury or admitted by the defendant violated the Sixth Amendment. The Supreme Court then held in <u>Cunningham</u> that the middle term specified in California's sentencing statutes, rather than the upper term, constituted the relevant statutory maximum. 549 U.S. at 294. The Court held that California's determinate sentencing law violated the Sixth Amendment because it authorized the judge, not the jury, to find the facts permitting an upper term sentence. <u>Id.</u>

After a jury convicted him of violating Health and Safety Code 11352, Petitioner was sentenced to ten years in state prison. (Resp't Ex. C. at 3-4.) Having the discretion to sentence Petitioner to three, four, or five years before doubling the sentence pursuant to Penal Code 667, the trial court decided to impose the upper

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.06\Rogers232_denyHC.wpd

United States District Court
For the Northern District of California

term.  (Id. at 3.)  Before the U.S. Supreme Court decided Cunningham, the state court of appeal rejected Petitioner's claim that imposition of the upper term violated his Sixth Amendment rights.  (Resp't Ex. C at 15.)  After Cunningham was decided, Petitioner filed a habeas petition raising the Cunningham claim in the Alameda Superior Court, which ultimately denied the petition on May 1, 2007, finding no Cunningham error.  According to the Reporter's Transcript, the Alameda Superior Court based its sentencing decision on several aggravating factors, including Petitioner's prior convictions as an adult, which were "numerous and [of] increasing seriousness."  (Resp't Ex. B. at 13.)  The state superior court denied this claim, finding that its sentencing decision was within the Apprendi exception allowing upper term sentences to be imposed based on the fact of prior convictions.  (Resp't Ex. I. at 4.)

Respondent argues that applying Cunningham to Petitioner's case violates the Supreme Court's holding in Teague v. Lane, 489 U.S. 288 (1989).  The Supreme Court found in Teague that a new rule of constitutional law cannot be applied retroactively on federal collateral review.  Id. at 316.  The Ninth Circuit has held that Cunningham did not announce a new rule and thus applies retroactively on collateral review, but only to convictions that became final on direct review after the decision in Blakely on June 24, 2004.  Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008); cf. In re Gomez, 45 Cal. 4th 650, 660 (Cal. 2009) (Cunningham applies to any California case in which the judgment was not final at the time the Blakely decision was issued).

Under Butler, Cunningham may be applied to the present case because Petitioner's conviction did not become final until after Blakely was decided in 2004.  (Pet. at 3).  Nonetheless, Cunningham does not invalidate Petitioner's sentence as the sentencing decision at issue fits within the Apprendi exception, which allows judges to use the fact of a prior conviction to enhance a sentence without that fact

having been submitted to a jury or proved beyond a reasonable doubt.  See

Apprendi, 530 U.S. at 480; accord Cunningham, 549 U.S. at 288.  Accordingly, the

state court's decision denying this claim was not contrary to, or an unreasonable

application of federal law, nor was it based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C.

§ 2254(d).

## CONCLUSION

The Court concludes that Petitioner has not shown any violation of his federal

constitutional rights in the underlying state criminal proceedings.  Accordingly, the

petition for a writ of habeas corpus is denied.  The Clerk shall enter judgment and

close the file.

IT IS SO ORDERED.

DATED:  6/16/09

JEREMY FOGEL
United States District Judge

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.06\Rogers232_denyHC.wpd

14

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

ERIC ROGERS,

               Petitioner,

  v.

K. MENDOZA-POWERS, Warden,

               Respondent.

_____/

Case Number: CV06-07232 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eric Rogers P74107
Avenal State Prison
P.O. Box 9
Avenal, CA 93204

Dated: _____

                     Richard W. Wieking, Clerk